# THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **SHANNON HESKETT** : | |
| 2956 Township Rd. 484 : | |
| Coshocton, OH 43812 : | |
| : | |
| Plaintiff, : | CASE NO. 2:21-cv-1316 |
| : | |
| v. : | JUDGE |
| : | |
| : | MAGISTRATE JUDGE |
| **PSI INDUSTRIAL SOLUTIONS** : | |
| 1703 Skyline Hts. : | **Jury Demand Endorsed Herein** |
| Coshocton, OH 43812 : | |
| : | |
| Defendant. : | |
| : | |

## COMPLAINT

NOW COMES Plaintiff Shannon Heskett ("Plaintiff") and proffers this Complaint for damages against Defendant PSI Industrial Solutions. ("Defendant").

## THE PARTIES

1. Plaintiff is a natural person residing in Coshocton County, Ohio.

2. Defendant PSI Industrial Solutions is an Ohio corporation doing business in the Southern District of Ohio.

3. At all relevant times, Plaintiff was an employee as that term is defined by the Americans with Disabilities Act of 1990 as amended, 42 U.S.C. §12101, *et seq*. ("ADA") and by O.R.C. Chapter 4112.

4. Defendant is an "employer" as defined by the Americans with Disabilities Act of 1990 as amended, 42 U.S.C. §12101, *et seq*. ("ADA") and by O.R.C. Chapter 4112.

1

## JURISDICTION AND VENUE

5. All counts contained herein are brought pursuant to the laws of the United States, therefore this Court has jurisdiction pursuant to 28 U.S.C. §1331.

6. This action is brought pursuant to the Americans with Disabilities Act of 1990 as amended, 42 U.S.C. §12101, *et seq.* ("ADA"), the Ohio Laws of Discrimination, R.C. Chapter 4112 ("Chapter 4112"), and 28 U.S.C. §1331. This Court's jurisdiction in this matter is also predicated upon 28 U.S.C. §1367 as this Complaint raises claims pursuant to the laws of Ohio, over which this Court maintains supplemental subject matter jurisdiction.

7. Venue is proper pursuant to 28 U.S.C. §1391, due to the fact that the Defendant has a facility in the Southern District of Ohio, at which the events in question took place.

8. Plaintiff has complied with all jurisdictional prerequisites to the filing of this lawsuit and this Complaint is filed within ninety (90) days of Plaintiff's receipt of her Right to Sue letter from the Equal Employment Opportunity Commission, a copy of which is attached hereto as "Exhibit A."

## FACTUAL BACKGROUND

9. Plaintiff began working for Defendant in or around June of 2018 as Executive Assistant to the Vice President, Gordon Kendall.

10. Plaintiff managed accounts payable/receivable for all companies under the Unger Group, which upon information and belief, owns and operates Defendant PSI Industrial Solutions.

11. Plaintiff's job duties included paying bills, receiving inventory, entering bills and deposits, printing and mailing checks, issuing purchase orders for operations staff, reconciling corporate credit cards, and other miscellaneous secretarial duties.

12. Plaintiff was diagnosed with a disability in or around 2009. Specifically, Plaintiff was diagnosed with depression and anxiety, mental impairments under the ADA and RC Chapter 4112.

13. Plaintiff manages her disabilities with medication and therapy.

14. Several episodes of unprofessional behavior from Mr. Kendall exacerbated Plaintiff's anxiety.

15. Shortly after Plaintiff began working for Defendant, Mr. Kendall berated her in front of a job applicant, who was standing near her desk filling out an application. Mr. Kendall shouted at her for not paying a bill that he had not previously instructed her to pay.

16. Other employees heard this outburst and later told Plaintiff they considered intervening because the interaction sounded so unprofessional.

17. Plaintiff requested accommodations for her disabilities on or about June 10, 2019.

18. Plaintiff explained to Mr. Kendall that her working conditions were making her disabilities worse. Plaintiff complained about constant interruptions and the location and size of her workspace.

19. Plaintiff attempted to educate Mr. Kendall about her conditions and how they impacted her ability to perform her job duties. She emailed him two links explaining clinical depression and generalized anxiety disorder. Mr. Kendall did not respond to this email.

20. On or about August 7, 2019, Plaintiff attempted to resign because Mr. Kendall's conduct continued to exacerbate the symptoms of her anxiety.

21. Plaintiff met with William Unger, President of PSI, and informed him of her disabilities.

22. Plaintiff specifically explained that she has clinical depression and generalized anxiety disorder.

23. Plaintiff also explained how Mr. Kendall's angry outbursts are not only anxiety-inducing, but also extremely intimidating and distracting.

24. Mr. Unger would not accept Plaintiff's resignation and asked her to give him more time to address the issue.

25. As a result, Plaintiff requested a reassignment so that she did not have to work under the direction of Mr. Kendall.

26. Plaintiff's request for reassignment was never granted, and she was expected to continue in her position as if the meeting did not occur.

27. On or about October 24, 2019, Plaintiff requested reasonable accommodations from Mr. Kendall for her anxiety.

28. Mr. Kendall told her that Mr. Unger has never granted "special privileges" to anyone and he was not going to start now.

29. Plaintiff asked if Mr. Unger ever actually responded to her accommodation requests, and Mr. Kendall stated that if she wanted an accommodation, she could talk to the company lawyers.

30. Plaintiff immediately went to her desk and put her requests for accommodations in writing and emailed them to Mr. Kendall and Mr. Unger.

31. Plaintiff requested a quieter space to better concentrate on her primary job function of accounts payable/receivable, a workspace free of diesel exhaust fumes which aggravated her asthma, and the opportunity to take a break when she became overstressed so that she could avoid symptoms of an anxiety attack.

32. Plaintiff specifically expressed that she was willing to arrive earlier, work later, or adjust her lunch hour if necessary to accommodate these requests.

33. Plaintiff's accommodation requests were reasonable, as they were neither costly, nor unduly burdensome to Defendant.

34. Plaintiff never received a reply to her email.

35. On or about December 17, 2019, Plaintiff experienced another incident with Gordon Kendall.

36. As a result, Plaintiff emailed Mr. Unger to request a meeting to discuss her accommodation requests.

37. Plaintiff asked if Mr. Unger had read any of her emails related to her disabilities.

38. Mr. Unger conceded that he had received her emails, but he did not have time to read the details about her disabilities.

39. Mr. Unger stated that he was not obligated to accommodate Ms. Heskett's disabilities because those rules do not apply to his company.

40. Mr. Unger asked Plaintiff if she took medication for her depression and anxiety.

41. When Plaintiff answered yes, Mr. Unger stated that he would never take a pill to make himself "happy."

42. At the conclusion of the meeting, no resolution was reached, and Mr. Unger subsequently went on vacation.

43. While he was gone, he requested Plaintiff to resign her employment via email.

44. The email, received on January 3, 2020, also accused Plaintiff of breaking company confidentiality procedures.

45. Mr. Unger drew that conclusion based on a comment Plaintiff previously made about her ability to view information about the wages of all of Defendant's employees.

46. This was the first time Defendant had ever alleged Plaintiff violated confidentiality procedures.

47. Mr. Unger requested an explanation from Plaintiff, along with a detailed explanation about why she should remain employed.

5

48. Mr. Unger also requested Plaintiff to resign her employment in exchange for two weeks of severance pay.

49. On January 9, 2020, Plaintiff emailed Mr. Unger a detailed response to all the allegations in his January 3rd letter.

50. Plaintiff refused to resign and requested for her disabilities to be accommodated pursuant to the ADA and ORC Chapter 4112.

51. Mr. Unger returned to work from vacation on or about January 13, 2020 and he terminated Plaintiff at the end of the workday after she refused to resign.

52. Mr. Unger did not provide Plaintiff with a reason for termination.

53. Mr. Unger did not address Plaintiff's response to his serious accusations, nor did he address her requests for accommodation.

54. Defendant refused to engage in the interactive process as is required by the ADA to consider possible accommodations for Plaintiff.

55. Defendant terminated Plaintiff because of her disabilities shortly after she had a thorough discussion with Mr. Unger related to her disabilities and accommodation requests.

56. Defendant retaliated against Plaintiff for requesting reasonable accommodations.

57. The proffered reasons for Plaintiff's termination are untrue and pretextual.

## COUNT I
### Disability Discrimination – R.C. §4112.02

58. At all times material herein, Plaintiff suffered from an impairment within the meaning of Section 4112.01(A)(16) of the Ohio Revised Code.

59. At all times material herein, Plaintiff was a qualified individual with a disability within the meaning of R.C. §4112.01(A)(13) of the Ohio Revised Code.

60. Defendant knew Plaintiff was disabled and/or regarded her as disabled because Plaintiff discussed both of her mental impairments with Mr. Unger and Mr. Kendall directly, and she requested accommodations for her disabilities from Defendant.

61. Defendant was aware of the difficulties suffered by Plaintiff as a result of her disabilities.

62. After Plaintiff requested reasonable accommodations for her disabilities, she was suddenly accused of violating confidentiality procedures and asked to resign.

63. Defendant never addressed Plaintiff's requests for accommodation.

64. Defendant discriminated against Plaintiff because of her disabilities by taking the following non-exhaustive list of actions: terminating her employment, retaliating against her, ignoring her requests for reasonable accommodations, and/or by otherwise discriminating against her in the terms, privileges and conditions of employment.

65. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer economic and non-economic damages, including but not limited to serious emotional distress and the loss of salary, benefits and other terms, privileges and conditions of employment for which Defendant is liable.

66. Defendant's conduct was willful, wanton, reckless and/or malicious for which Defendant is liable for compensatory damages, punitive damages and reasonable attorney's fees and costs.

## COUNT II
**Disability Discrimination - Americans with Disabilities Act**

67. Plaintiff reasserts and reincorporates all allegations in the paragraphs above as if fully rewritten herein.

68. This claim is brought under federal law, pursuant to 42 U.S.C. § 12101, *et seq.*, and as defined in 42 U.S.C. § 12101.

69. Plaintiff is an otherwise qualified individual.

70. Defendant knew or had reason to know Plaintiff suffered from disabilities, and/or regarded her as disabled.

71. Defendant was aware of the difficulties suffered by Plaintiff as a result of her disabilities.

72. Defendant discriminated against Plaintiff because of her disabilities by taking the following non-exhaustive list of actions: terminating her employment, retaliating against her, ignoring her requests for reasonable accommodations, and/or by otherwise discriminating against her in the terms, privileges and conditions of employment.

73. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer economic and non-economic damages, including but not limited to serious emotional distress and the loss of salary, benefits and other terms, privileges and conditions of employment for which Defendant is liable.

74. Defendant's conduct was willful, wanton, reckless and/or malicious for which Defendant is liable for compensatory damages, punitive damages and reasonable attorney's fees and costs.

## COUNT III
### Retaliation- R.C. §4112.02

75. Plaintiff reasserts and reincorporates all allegations in the paragraphs above as if fully rewritten herein.

76. Plaintiff engaged in a protected activity by requesting reasonable accommodations for her disabilities.

77. Defendant knew Plaintiff engaged in a protected activity.

78. Once Plaintiff engaged in the aforementioned protected activity, Defendant purposefully retaliated against Plaintiff by taking the following non-exhaustive list of actions:

terminating her employment, retaliating against her, refusing her reasonable accommodation, and/or by otherwise discriminating against her in the terms, privileges and conditions of employment.

79. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer economic and non-economic damages, including but not limited to pain and suffering, and the loss of salary, benefits and other terms, privileges and conditions of employment for which Defendant is liable.

80. Defendant's conduct was willful, wanton, reckless and/or malicious for which Defendant is liable for compensatory damages, punitive damages and reasonable attorney's fees and costs.

## COUNT IV
**Retaliation- Americans with Disabilities Act**

81. Plaintiff reasserts and reincorporates all allegations in the paragraphs above as if fully rewritten herein.

82. Plaintiff engaged in a protected activity by requesting reasonable accommodation for her disabilities.

83. Defendant knew Plaintiff engaged in a protected activity.

84. Once Plaintiff engaged in the aforementioned protected activity, Defendant purposefully retaliated against Plaintiff by taking the following non-exhaustive list of actions: terminating her employment, retaliating against her, refusing her reasonable accommodation, and/or by otherwise discriminating against her in the terms, privileges and conditions of employment.

85. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer economic and non-economic damages, including but not limited to pain and suffering, and the loss of salary, benefits and other terms, privileges and conditions of employment for which Defendant is liable.

86. Defendant's conduct was willful, wanton, reckless and/or malicious for which Defendant is liable for compensatory damages, punitive damages and reasonable attorney's fees and costs.

## COUNT V
### Failure to Accommodate- Americans with Disabilities Act

87. Plaintiff reasserts and reincorporates all allegations in the paragraphs above as if fully rewritten herein.

88. At all times material herein, Plaintiff was disabled, or regarded as being disabled, as defined in 42 U.S.C. §12102.

89. Defendant knew or had reason to know that Plaintiff suffered from a disability, and/or regarded her as disabled.

90. Plaintiff was an otherwise qualified individual with a disability.

91. Plaintiff requested a reasonable accommodation for her disability when she requested a quieter, cleaner workspace and the opportunity to take a break when feeling overwhelmed.

92. Such reasonable accommodations were possible for Defendant to provide.

93. Defendant violated the ADA by failing to accommodate Plaintiff's disability by terminating Plaintiff for issues related to her disability.

94. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer economic and non-economic damages, including but not limited to pain and suffering, and the loss of salary, benefits and other terms, privileges and conditions of employment for which Defendant is liable.

95. Defendant's conduct was willful, wanton, reckless and/or malicious for which Defendant is liable for compensatory damages, punitive damages and reasonable attorney's fees

and costs.

## COUNT VI
### Failure to Accommodate- R.C. §4112.02

96. Plaintiff reasserts and reincorporates all allegations in the paragraphs above as if fully rewritten herein.

97. At all times herein, Plaintiff suffered from an impairment within the meaning of R.C. §4112.01.

98. At all times material herein, Plaintiff was a qualified individual with a disability within the meaning of R.C. §4112.01

99. Defendant knew or had reason to know Plaintiff suffered from a disability and/or regarded her as disabled.

100. Plaintiff requested a reasonable accommodation for her disability when she requested a quieter, cleaner workspace and the opportunity to take a break when feeling overwhelmed.

101. Such reasonable accommodations were possible for Defendant to provide.

102. Defendant violated R.C. §4112.02 by failing to accommodate Plaintiff's disability, by retaliating against Plaintiff for seeking a reasonable accommodation, and by failing to engage in a good faith interactive process to determine an objectively reasonable accommodation for Plaintiff's disability.

WHEREFORE, Plaintiff demands:

For all Counts, monetary damages including back pay and benefits, statutory liquidated damages, expert witness fees and attorneys' fees and costs, and front pay, compensatory damages and punitive damages in an amount to be determined at trial, but in any event not less than $75,000.00 and any and all other relief, which the Court deems just and appropriate.

Respectfully submitted,


/s/ *Peter G. Friedmann*
Peter G. Friedmann (0089293)
(*Pete@thefriedmannfirm.com*)
Rachel A. Sabo (0089226)
(*Rachel@thefriedmannfirm.com*)
**The Friedmann Firm LLC**
1457 S. High Street
Columbus, OH 43207
614-610-9756 (Phone)
614-737-9812 (Fax)

*Attorneys for Plaintiff*


## JURY DEMAND

Plaintiff hereby requests a jury of at least eight (8) persons.

/s/ *Peter G. Friedmann*
Peter G. Friedmann (0089293)